Filed 10/30/13  Modified and certified for publication 11/20/13 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JUAN JOSE LEAL et al., | B240056 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC419013) |
| v. | |
| ANTOINE Y. MANSOUR, M.D., | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Mary Ann Murphy, Judge.  Affirmed.

Alan S. Yockelson and Neil M. Howard for Plaintiffs and Appellants.

Cole Pedroza, Curtis A. Cole, Cassidy C. Davenport; Herzfeld & Rubin, Michael A. Zuk and Napoleon G. Tercero for Defendant and Respondent.

Plaintiffs and appellants Juan Jose Leal and Juan Carlos Hernandez, the husband and son of decedent Felipa Hernandez, filed a wrongful death action against defendant CHA Hollywood Presbyterian Medical Center (Hospital) and defendant and respondent Antoine Y. Mansour, M.D.  At the close of plaintiffs' evidence, the Hospital's motion for nonsuit was granted, and trial by jury proceeded as against Dr. Mansour.  Plaintiffs appeal from the judgment entered in favor of Dr. Mansour, the jury having found any negligence by Dr. Mansour was not a substantial factor in the death of Mrs. Hernandez.  Plaintiffs' sole contention on appeal is the trial court erred in allowing Dr. Mansour to present evidence and argument to the jury that a ventilator malfunction was the cause of death, not the negligence of Dr. Mansour.  Plaintiffs argue that Code of Civil Procedure section 581c (section 581c) precluded Dr. Mansour from presenting such evidence and arguments, and the trial court therefore erred in allowing that evidence to be presented to the jury and in denying plaintiffs' motion for new trial.  We conclude the court did not err and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have not raised a substantial evidence question.  We summarize the material facts germane to our discussion.

On August 4, 2008, Mrs. Hernandez experienced a "gallbladder attack," having suffered for years from problems with her gallbladder.  She went to the Hospital's emergency room and was admitted for treatment.  Her doctor, Mansour, had previously discussed surgical options with Mrs. Hernandez, in light of her history, and he again recommended she undergo a laparoscopic cholecystectomy (the surgery).  Mrs. Hernandez agreed and the surgery was performed by Dr. Mansour that same day.  There were no apparent complications during surgery, and the following morning Mrs. Hernandez appeared to be doing well and was scheduled to be discharged.

However, around midday on August 5, 2008, Mrs. Hernandez's condition deteriorated.  She exhibited multiple symptoms, including shortness of breath, low blood pressure and chest pain.  Dr. Mansour ordered Mrs. Hernandez to be immediately taken to the intensive care unit (ICU).  He requested several consults from other physicians,

2

believing Mrs. Hernandez may have been suffering from a pulmonary embolism, a heart attack, or a bile leak.

After Dr. Steven Gitlin, the pulmonary specialist, essentially ruled out a pulmonary embolism, a CAT scan was performed and it was determined that fluid was accumulating in Mrs. Hernandez's abdomen. Dr. Mansour ordered the fluid drained, but a needle aspiration procedure was performed instead, removing only some of the fluid, which appeared to be bile. Dr. Mansour placed another order for "intra-abdominal fluid drainage under ultrasound" (requiring the placement of a drain). Sometime in the evening of August 5, 2008, Mrs. Hernandez was placed on a ventilator because of her deteriorating condition.

On August 6, radiologist Edward Neymark placed a drain in accordance with Dr. Mansour's order and recovered 1.5 liters of greenish brown peritoneal fluid from Mrs. Hernandez's abdominal cavity. Dr. Arash Alborzi, specializing in internal medicine and infectious diseases, determined Mrs. Hernandez was suffering from sepsis and septic shock due to an infection in her abdomen and ordered broad-spectrum antibiotics.

Around 9:00 in the evening of August 6, 2008, the alarm on Mrs. Hernandez's ventilator sounded and ICU nurse, Robert Bustos, Jr., immediately responded to her room. He determined the ventilator was properly connected and she appeared to be receiving oxygen, but he called for the respiratory technician. The technician could not determine the reason for the alarm, and switched out the ventilator for a new one, while nurse Bustos manually provided oxygen to Mrs. Hernandez. During this time, Mrs. Hernandez's pulse dropped precipitously. A "Code Blue" was called at 9:04 p.m., resuscitation efforts were administered, and the medical records reflect the notation of a return pulse at 9:08 p.m.

Dr. Andrew Woo, a neurologist, was called in to assess Mrs. Hernandez after the Code Blue. He determined she suffered anoxic brain injury resulting from a lack of oxygen to the brain and did not experience a return of any prognostic signs indicating recovery, such as corneal response to light or other normal neurologic indicators.

3

Mrs. Hernandez remained in a coma and passed away on August 18, 2008. No autopsy was performed.

Plaintiffs filed suit against the Hospital and Dr. Mansour stating claims for medical negligence and wrongful death. Plaintiffs alleged the Hospital was negligent, among other things, in failing "to insure that the ventilator used in the care of Felipa Hernandez was properly functioning and that [she] at all times received adequate oxygen." Plaintiffs alleged Dr. Mansour failed to adhere to the standard of care in performing the surgery and Mrs. Hernandez's post-operative care.

The case proceeded to a jury trial in January 2012. Plaintiffs presented expert testimony primarily focused on the postoperative care provided by Dr. Mansour. In essence, plaintiffs' expert opined that Dr. Mansour breached the standard of care by failing to timely return Mrs. Hernandez to surgery to correct the bile leak, and possible bowel or intestinal perforation, which resulted in the accumulation of fluid, abdominal infection and septic shock. Dr. Jordan Goodstein opined the cause of death was peritonitis or infection in the abdominal cavity. Dr. Edward Phillips, an expert retained by the Hospital but called by plaintiffs to testify in their case-in-chief, also opined that Dr. Mansour breached the standard of care and that Mrs. Hernandez should have been taken back to surgery on August 5 because she was suffering from an "abdominal catastrophe."

Following the completion of plaintiffs' case-in-chief, the Hospital orally moved for a nonsuit. The grounds stated for the motion were that plaintiffs failed to present any expert testimony on the standard of care relative to the Hospital on the issue of the alleged ventilator malfunction. After allowing argument, the court granted the motion. The court entered a minute order stating "[Hospital's] motion for non-suit is argued and GRANTED. Plaintiff's [*sic*] action against [Hospital] is dismissed."

Dr. Mansour then presented his evidence, calling Dr. Woo, the neurologist, as his first witness. Before Dr. Woo provided any testimony, plaintiffs' counsel asked to approach, and a side bar conference was held. Plaintiffs' counsel said: "I want to make sure we're not going to hear testimony about a ventilator malfunction that caused harm to

4

this patient, because we already heard that there's no testimony on that and the hospital has already been dismissed."

Defense counsel responded: "Absolutely, Your Honor. It goes to causation. Where he's been designated. [¶] We won't ask questions about the standard of care, but we're absolutely entitled to ask about causation. I'm not bound by a failure of plaintiff to put on his case against the hospital." The court ruled the testimony would "be permitted."

Dr. Woo testified to his opinions about Mrs. Hernandez's cause of death. He stated that, in his opinion, Mrs. Hernandez "suffered a cardiopulmonary arrest" on August 6 "due to a ventilator malfunction that was documented in the [medical] records." He conceded she was septic and "very sick" but that the "timeline of her vital signs" showed that her numbers had actually begun to improve, and then there was a "very sudden event" resulting in a rapid drop of blood pressure. "[T]he fact that there was some type of documented mechanical or ventilator failure, the fact they literally had to change the ventilator, put in a new switch for a new machine after this whole arrest took place, makes me feel in my opinion that the ventilator had some significant role in causing the cardiopulmonary arrest." Dr. Woo went on to opine that Mrs. Hernandez passed away 12 days later and that the "cardiopulmonary arrest causing the anoxic brain injury was the primary reason for her death." On cross-examination, Dr. Woo conceded the septic shock was also a substantial factor in Mrs. Hernandez experiencing cardiopulmonary arrest on August 6.

The next morning, plaintiffs presented a two-page trial brief to the court arguing that the evidence presented by Dr. Mansour regarding the ventilator malfunction was improper under section 581c, subdivision (d), and that the court should strike the testimony. Plaintiffs also proposed two jury instructions instructing the jury that because the court granted a nonsuit in favor of the Hospital, the jury could not attribute any fault to the Hospital in rendering a verdict. The court entertained argument, but deferred a ruling, noting that counsel had presented a "skeletal" brief with little or no authorities. Testimony from Dr. Mansour's witnesses continued.

5

During the testimony of ICU nurse Bustos, a side bar conference was held and the court admonished plaintiffs' counsel that simply "throwing out a code section" (section 581c) was not a precise objection to specific testimony on which a proper ruling could be made. Plaintiffs' counsel responded that he was objecting to preclude Dr. Mansour "from eliciting testimony that would attribute fault to the [H]ospital, which was granted [a] nonsuit, Your Honor."

The court then allowed further argument and explained to counsel the research the court had done on the issue. The court concluded that the Hospital had obtained an adjudication on the merits by virtue of the order granting the nonsuit and that section 581c, subdivision (d) is "pretty clear" and precluded Dr. Mansour from attempting to "lay blame" on the Hospital. The court asked defense counsel to clarify the purpose of the testimony being elicited about the ventilator malfunction.

Defense counsel stated he was not trying to lay blame on Hospital, and the evidence was offered on the separate issue of the cause of the death of plaintiffs' decedent. "There will be no evidence of any standard of care deviation. There will be no criticism, nor has there been, of any procedures, policies, or actions by [Hospital] staff or personnel. There will be testimony, which I'm eliciting now, and have elicited, regarding an alternative causation." Counsel said he was entitled to present evidence of the ventilator malfunction to establish the true cause of death. "That does not mean that [the Hospital was] negligent in maintaining the ventilator, it does not mean they were negligent in responding to it, all it means is that a piece of equipment failed."

The trial court ruled that Dr. Mansour would be allowed to present evidence of the ventilator malfunction as alternative causation evidence, but could not present evidence or argue any fault or culpability on the part of the Hospital.

Pursuant to a special verdict, the jury found Dr. Mansour had been negligent in the diagnosis and/or treatment of plaintiffs' decedent, but that his negligence had not been a substantial factor in causing her death. Judgment was entered in favor of Dr. Mansour and the Hospital. Plaintiffs filed a motion for new trial, arguing in part that the court

6

erred in allowing testimony in violation of section 581c, subdivision (d). The court denied plaintiffs' motion, and this appeal followed.

## DISCUSSION

At the heart of plaintiffs' appeal is the scope of section 581c, which provides, in relevant part, that "[i]n actions which arise out of an injury to the person or to property, when a motion for judgment of nonsuit was granted on the basis that the defendant was without fault, no other defendant during trial, over plaintiff's objection, may attempt to attribute fault to or comment on the absence or involvement of the defendant who was granted the motion." (§ 581c, subd. (d).)

Plaintiffs contend the trial court erred, in light of section 581c, subdivision (d), in allowing Dr. Mansour to present evidence of the ventilator malfunction on the issue of the cause of death of Mrs. Hernandez. "Trial court rulings on the admissibility of evidence, whether in limine or during trial, are generally reviewed for abuse of discretion." (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) Trial court error as to the admissibility of evidence " 'is grounds for reversing a judgment only if the party appealing demonstrates a "miscarriage of justice"—that is, that a different result would have been probable if the error had not occurred.' [Citations.]" (*Ibid.*) Plaintiffs have not persuaded us there was any such abuse.[1]

The Hospital obtained nonsuit on the ground that plaintiffs failed to offer any evidence as to its standard of care regarding the alleged ventilator malfunction. As the trial court correctly observed, the dismissal constituted an adjudication on the merits in favor of the Hospital. (§ 581c, subd. (c) [when a motion is granted "unless the court in its order for judgment otherwise specifies, the judgment of nonsuit operates as an adjudication upon the merits"].) The court did not specify in its order that the nonsuit

---

[1] We reject Dr. Mansour's contention plaintiffs failed to preserve their objection to the alternative causation evidence during trial. The background summary demonstrates plaintiffs preserved their objections.

was being granted on some basis not going to the merits of the claims against the Hospital.

Plaintiffs contend the nonsuit extinguished Dr. Mansour's right to continue to offer, as his defense, evidence that the ventilator malfunction was the cause of Mrs. Hernandez's death, because, they say, such evidence constituted improper "comment" on the involvement of the Hospital, which is prohibited by section 581c, subdivision (d). Plaintiffs contend it was improper comment because the ventilator was the Hospital's equipment, and its responsibility to maintain and operate properly, so attributing the cause of death to the Hospital's equipment was the same as attributing fault or commenting on the involvement of the Hospital in the death of Mrs. Hernandez.

Plaintiffs contend that if Dr. Mansour wanted to continue to argue the ventilator malfunction was the cause of death, it was incumbent upon him to oppose the Hospital's motion for nonsuit. Plaintiffs are correct the statute requires a defendant to oppose a codefendant's motion for nonsuit where the opposing defendant seeks to have fault, wholly or partially, attributed to the codefendant. "The statute forces a defendant to oppose a codefendant's nonsuit motion or face liability on his or her own." (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 419, p. 493.)

Dr. Mansour did not oppose the Hospital's motion for nonsuit. Dr. Mansour contends he had no reason to oppose the nonsuit because his defense was not based on proof that the Hospital acted negligently so that fault should be attributed to the Hospital. Dr. Mansour's defense was that the ventilator inexplicably malfunctioned, and that the loss of oxygen was the cause of Mrs. Hernandez's cardiopulmonary arrest, resulting brain injury and ultimate death several days later. Dr. Mansour did not try to prove the Hospital was liable for the ventilator malfunction, nor did he argue that any other party had been negligent and should be held liable for the ventilator malfunction.

Plaintiffs counter by urging that it would eviscerate the statute to allow a defendant to offer causation evidence that involves a codefendant that has obtained nonsuit so long as the "magic" word fault is not used, and would allow most codefendants to avoid application of section 581c, subdivision (d). Neither party cites

8

any case law addressing the interpretation of subdivision (d) of section 581c or otherwise discussing whether the statute applies on facts similar to those presented here. Our research did not disclose any cases on point. We are not persuaded that Dr. Mansour's evidence that the ventilator malfunction was the cause of Mrs. Hernandez's death contravened the letter or spirit of section 581c, subdivision (d).

Plaintiffs were on notice that Dr. Mansour was basing his defense not only on evidence he acted within the standard of care but on expert testimony that the sole cause of death was the cardiopulmonary arrest on August 6 caused by the ventilator malfunction. Dr. Woo was designated as an expert on causation, was deposed and stated his opinions that the equipment failed, apparently through no fault of any party, causing the arrest resulting in brain injury, and ultimately death. Presumably, plaintiffs are not suggesting the Hospital can be held to a standard of strict liability for every malfunction in its equipment and nonsuit denied on that basis. Plaintiffs cross-examined Dr. Woo on his opinions, challenging him on issues related to whether the record supported a determination that the ventilator had simply malfunctioned or actually deprived Mrs. Hernandez of oxygen. Given the percipient and expert testimony regarding the respirator incident on August 6, the evidence was relevant to a resolution of the case against Dr. Mansour.

Section 581c, subdivision (d) was intended to prevent the bad faith practice of relying on a dismissed defendant to confuse the jury and attempt to avoid liability for one's own wrongdoing, the so-called "empty chair" defense. Personal injury damages may result from multiple concurrent or superseding causes, not all of which have been set in motion by a culpable party. We do not believe the statute was intended to prevent a defendant from presenting, in good faith, relevant evidence related to a causative factor for which there is no culpable party.

9

## DISPOSITION

The judgment is affirmed. Defendant and respondent Antoine Y. Mansour, M.D. shall recover his costs on appeal.

GRIMES, J.

We concur:

BIGELOW, P. J.

FLIER, J.

10

Filed 11/20/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JUAN JOSE LEAL et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ANTOINE Y. MANSOUR, M.D., <br><br> Defendant and Respondent. | B240056 <br><br> (Los Angeles County <br> Super. Ct. No. BC419013) <br><br> **ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION** <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on October 30, 2013, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

It is further ordered, the opinion shall be modified as follows:

On page 3, the first two sentences in the last paragraph beginning with "Dr. Andrew Woo, a neurologist . . ." are deleted and replaced with:

> Dr. Yoo, a neurologist, was called in to assess Mrs. Hernandez after the Code Blue. It was determined Mrs. Hernandez suffered injury resulting from a lack of oxygen to the brain and did not experience a return of any prognostic signs indicating recovery, such as corneal response to light or other normal neurologic indicators.

On page 4, the first sentence in the last paragraph beginning with "Dr. Mansour then presented his evidence . . ." is deleted and replaced with:

Dr. Mansour then presented his evidence, calling Dr. Andrew Woo, an expert neurologist, as his first witness.

These modifications do not change the judgment.

_____
BIGELOW, P. J.                    FLIER, J.                    GRIMES, J.